**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com

**GREENBERG & LIEBERMAN, LLC**
Stevan Lieberman, Esq. (*Pro Hac Vice* Forthcoming)
1775 Eye Street NW, Suite 1150
Washington DC, 20006
Telephone: 202-625-7000
Facsimile: 202-625-7001
stevan@aplegal.com

Attorneys for Plaintiff
Mohammad Mukati

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| **MOHAMMAD MUKATI**, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>**JOHN DOE**, et al.,<br><br>        Defendants. | Case No. 4:17-cv-07093-YGR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>[Fed. R. Civ. P. 65; L.R. 65–1]<br><br>Date:    TBD<br>Time:    TBD<br>Ctrm:    1301 Clay Street<br>        Oakland, CA 94612<br>Before:  Hon. Yvonne Gonzalez<br>        Rogers |

1    Plaintiff, Mohammed Mukati (hereinafter "Plaintiff"), by and through his counsel,

2  respectfully submits this Memorandum of Points and Authorities in support of his

3  renewed motion for a preliminary injunction: a) directing the domain name registrar

4  Namecheap, which controls five of the 446 Stolen Domain Names, to transfer the Stolen

5  Domain Names to the domain registrar, Dynadot, which currently controls 441 of the

6  Stolen Domain Names; b) directing Dynadot to place all of the Stolen Domain Names in a

7  single account, allow Plaintiff to control said account, and allow Plaintiff to pay for

8  renewals of all the Stolen Domain Names.

9    Defendant John Doe ("Defendant") intentionally, maliciously, and willfully, using

10  nefarious means, obtained unlawful access to the Plaintiff's email account and domain

11  name registration account, and thereafter transferred to himself 446 of Plaintiff's domain

12  names by taking control of Plaintiff's Dynadot account. Defendant also re-directed all

13  Internet traffic to the stolen domain names to himself. Further, the Defendant attempted

14  to sell the stolen domain names back to the Plaintiff, in an attempt to extort money from

15  the Plaintiff.

16    Plaintiff seeks a preliminary injunction a) directing the domain name registrar

17  Namecheap, which controls five of the 446 stolen domain names, to transfer the stolen

18  domain names to the domain registrar, Dynadot, which currently controls 441 of the

19  stolen domain names; b) directing Dynadot to place all of the stolen domain names in a

20  single account, allow Plaintiff to control said account, and allow Plaintiff to pay for

21  renewals of all the stolen domain names.[1] Failure of Namecheap to transfer the stolen

22  domain names to Dynadot, and the failure of Dynadot to give Plaintiff control of the stolen

23  domain names, will allow the thief to place any type of content on the websites at the

24  stolen domain names, including content that may be harmful to both the reputation and

25  future use of the domain names. This would cause irreparable injury to Plaintiff. The thief

26  who stole the domain names will be well aware of this lawsuit even if they do not

---

27  [1] Notably, domain name registrars Dynadot, Inc. and Namecheap, Inc. have already

28  tendered control of the stolen domain names in their possession to the Court, by submitting registrar certificates under 15 U.S.C. § 1125(d)(2)(D)(i)(I). [D.E. 8, 12.]

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA   94108

respond, and the thief will know that their time to control and exploit the domain names is limited. Thus, quick action by this Court is required to avert such irreparable harm.

### Statement of Facts

1.  Plaintiff purchased the 446 domain names as set forth on Exhibit 1 to the Complaint and named *in rem* in the Complaint as defendants (hereinafter, "Stolen Domain Names"). Plaintiff has owned the Stolen Domain Names ever since this initial registration. (Declaration of Mohammad Mukati in Support of Plaintiff's Renewed Motion for Temporary Restraining Order ("Mukati Decl.") ¶ 5 & Ex. 1; Verified Compl. ¶18.)

2.  Many of the Stolen Domain Names were bought or renewed for Plaintiff by his employees / contractors, including Jamila Lota. (Mukati Decl. ¶ 12; Declaration of Lota Jamila in Support of Renewed Motion for Temporary Restraining Order ("Jamila Decl.") ¶ 6.)

3.  Plaintiff uses a number of advertising systems to drive internet traffic to his websites at the Stolen Domain Names. One of the companies is called PropellerAds and has a website at: https://propellerads.com/. Propeller does not allow use of their system unless their customer can verify ownership of any domain names used in advertising. (Mukati Dec ¶ 17 & Exs. 5–6.) Thus, if Plaintiff cannot verify his ownership of the Stolen Domain Names, he will not be able to uses this advertising service.

4.  Google works in a similar fashion as PropellerAds, requiring ownership verification before use of the Google advertising platform.[2] (Mukati Decl. ¶ 18 & Ex. 7.)

5.  100 pages of expiring domain name emails from Dynadot listing the Stolen Domain Names makes it clear that according to Dynadot's system Mukati is the true owner of the Stolen Domain Names. (Mukati Decl. ¶ 13 & Ex. 2.)

6.  Both Plaintiff and Plaintiff's mother have renewed the Stolen Domain Names over the years. (Mukati Decl. ¶ 15.)

7.  Payments to Dynadot for the renewal of the Stolen Domain Names from

---

[2] Google domain verification instructions may be found at: https://support.google.com/a/answer/6248925?hl=en

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

February 25, 2016 to April 3, 2017, prior to them being stolen, also show that Dynadot's system registers Mukati as the true owner of the Stolen Domain Names (Mukati Decl. ¶ 14 & Ex. 3), as do payments by Plaintiff's mother, Samina Mukati via her PayPal account for the renewal of the Stolen Domain Names before they were stolen. (Mukati Decl. ¶¶ 15–16 & Ex. 4.)

8. The Stolen Domain Names are used by the Plaintiff for his websites that sell goods and services and for monetizing Internet traffic.  The Stolen Domain Names generate substantial income as well as good will for Plaintiff's business and support for his business reputation. (*See* Verified Compl. *passim*; Mukati Decl. *passim*.)

9. In some cases Defendant Doe changed the DNS settings for certain Stolen Domain Names and is redirecting all visitors to the particular Stolen Domain Names to websites under Defendant's control, and thereby depriving Plaintiff of income arising from the particular Stolen Domain Names. One example of such a domain is Geomovies.co which was previously making $45,000 a month, which revenue is now being redirected into Defendant Doe's pocket. (*See* Mukati Decl. ¶11.)

10. Due to Defendant Doe's actions Plaintiff no longer has the ability to pay his employees (Jamila Decl. ¶ 8) and continues to have to pay on his advertising contracts in the amount of $21,000 a month. (Mukati Decl. ¶ 19.)

11. By modifying the DNS settings of the Stolen Domain Names, all Internet traffic and emails to the Stolen Domain Names have been re-directed to Defendant, and the associated income and positive reputation have been forever lost to Plaintiff. (Mukati Decl. ¶ 20.)

12. Due to Defendant's intentional, willful, and malicious actions that have caused irreparable harm to Plaintiff's business and reputation, Plaintiff brought this action.

### <u>Argument</u>

To be entitled to a preliminary injunction a movant must show 1) likelihood of irreparable harm to Plaintiff without preliminary injunction, 2) likelihood of little harm to

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1    Defendant from the injunction; 3) likelihood of success by the Plaintiff on the merits; and

2    4) the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). The

3    court must balance the competing claims of injury and must consider the effect on each

4    party of the granting or withholding of the requested relief. *Id.*

5    **I.      Irreparable Harm to Plaintiff without Preliminary Injunction**

6        Defendant's actions have abruptly stopped Plaintiff's business. (Mukati Decl.

7    *passim.*) No longer can Plaintiff continue to buy domain names and set up websites for

8    profit, as his revenue has been cut off by Defendant. (*See* Mukati Decl. *passim.*) Further,

9    Plaintiff has the continued burden of paying for the costs of the business – loan notes,

10   website hosting, and employees (if he does not wish to lose them) without the income

11   from the business to pay for those costs. (*See* Compl., D.E. 1 ¶ 42.) This has placed

12   Plaintiff at risk for significant financial and reputational loss. (*See id.*) It will also place

13   Plaintiff's employees in the position of having to find other work. (*See id.*) Further,

14   through use in commerce for many years, Plaintiff has developed common law trademark

15   rights in the subject marks, and the Defendant's act of redirecting Plaintiff's movie-related

16   domain names means that Plaintiff's regular customers will look elsewhere for their

17   movie services. (*See* Compl., D.E. 1 ¶¶ 21, 39.) In the absence of a preliminary

18   injunction, the Defendant will have free rein to destroy the good reputation of the Stolen

19   Domain Names, which the Plaintiff has spent years building. (*See* Compl., D.E. 1

20   *passim.*)

21   **II.     Harm to Defendant Minimal**

22       The harm to the Defendant (if any), on the other hand, is the mere deprivation of

23   ill-gotten gains.

24   **III.    There is a Substantial Likelihood of Success on the Merits**

25       The Stolen Domain Names are owned by the Plaintiff and stolen by the

26   Defendant, through Defendant's unauthorized access to the Plaintiff's email and domain

27   name management accounts. In California a registrant has "an intangible property right in

28   his [or her] domain name . . . ." *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003).

The WHOIS records[3] for the Stolen Domain Names show that Plaintiff was the owner of the Stolen Domain Names prior to their theft and that ownership was renewed regularly by Plaintiff, leaving no doubt that, but for Defendant's actions, Plaintiff would still have a right to the Stolen Domain Names. Accordingly, Plaintiff has a substantial likelihood of success on the merits.

**IV.     Public Interest**

Courts of equity, in exercising their discretion, should pay particular regard to the public consequences in employing the extraordinary remedy of injunction. *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 312 (1982). The public interest analysis for the issuance of a preliminary injunction requires the court to consider whether a critical public interest would be harmed by the granting of preliminary relief. *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006).

Here, the public interest is in fact benefitted by granting a preliminary injunction, because absent an injunction a) the Plaintiff will be permanently deprived of the income from the Stolen Domain Names and the associated websites; b) Plaintiff's employees may lose their jobs; c) Plaintiff will be in the position where he will soon no longer to be able to make the payments on his loans; d) and it is likely that Plaintiff's customers will be confused when going to domain names being controlled by Defendant thinking they are controlled by Plaintiff. Further, the public interest in certainty of control of one's property would be promoted by the issuance of a preliminary injunction.

**V.      Conclusion**

For the aforesaid reasons Plaintiff requests a preliminary injunction a) directing the domain name registrar Namecheap, which controls five of the 446 Stolen Domain Names, to transfer the Stolen Domain Names to the domain registrar, Dynadot, which currently controls 441 of the Stolen Domain Names; b) directing Dynadot to place all of the Stolen Domain Names in a single account, allow Plaintiff to control said account, and

---

[3] WHOIS records are created by accredited domain name registrars, and reflect the identities of registrants of domain names. See, https://www.icann.org/resources/pages/what-2013-03-22-en.

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

allow Plaintiff to pay for renewals of all the Stolen Domain Names.

Respectfully submitted,

DATED: January 5, 2018                    **KRONENBERGER ROSENFELD, LLP**


                                           s/ Karl S. Kronenberger
                                          Karl S. Kronenberger

                                         Attorneys for Plaintiff


**GREENBERG & LIEBERMAN, LLC**
Stevan Lieberman, Esq. (*Pro Hac Vice* Forthcoming)
1775 Eye Street NW, Suite 1150
Washington DC, 20006
Telephone: 202-625-7000
Facsimile: 202-625-7001
stevan@aplegal.com